JAS S. DHILLON, ESQ. (SBN 252842)
**LAW OFFICE OF JAS DHILLON, P.C.**
902 N. Central Ave., Suite 201
Tracy, CA 95376
(209) 213-3112
(209) 637-2835 (fax)
Email: jas.dhillon@jasesq.com

Attorney for Plaintiff
ASHLEY SIMPSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ASHLEY SIMPSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EOS IT MANAGEMENT SOLUTIONS, INC., a Delaware corporation, META PLATFORMS, INC., a Delaware corporation, and DOES 1–25, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1.    Title VII — Hostile Work Environment / Sexual Harassment (42 U.S.C. § 2000e- 2(a)(1))<br><br>2.    Title VII — Retaliation (42 U.S.C. § 2000e-3(a))<br><br>3.    FEHA — Discrimination (sex) (Cal. Gov. Code § 12940(a))<br><br>4.    FEHA — Harassment (Cal. Gov. Code § 12940(j))<br><br>5.    FEHA — Failure to Prevent Discrimination and Harassment (Cal. Gov. Code § 12940(k))<br><br>6.    FEHA — Retaliation (Cal. Gov. Code § 12940(h))<br><br>7.    Whistleblower Retaliation (Cal. Lab. Code § 1102.5)<br><br>8.    Retaliation for Safety Complaints (Cal. Lab. Code § 6310)<br><br>9.    Intentional Infliction of Emotional Distress (Common Law)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ASHLEY SIMPSON (hereinafter "Plaintiff") hereby files this Complaint against Defendants EOS IT Management Solutions, Inc., Meta Platforms, Inc. (collectively "Defendants"), and DOES 1–25.

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action for damages and injunctive relief arising from unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the California Fair Employment and Housing Act, Cal. Gov. Code § 12900 et seq. ("FEHA"); the California Labor Code; and common law.

2.    Plaintiff seeks redress for discrimination, harassment (including quid pro quo and hostile work environment), retaliation, unsafe working conditions, whistleblower/safety retaliation, and intentional infliction of emotional distress.

## II.    VENUE AND JURISDICTION

3.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5. This Court also has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a).

4.    Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here, and because Defendants reside and conduct business in this District.

5.    Assignment to the Oakland Division is proper under Civil L.R. 3-2(c)–(d) because Defendant EOS has its principal place of business in Alameda County and substantial events occurred in Alameda County.

## III.    JOINT EMPLOYER ALLEGATIONS

6.    Defendants jointly employed Plaintiff under Title VII, FEHA, and California law. Defendant Meta controlled Plaintiff's new-hire orientation, day-to-day work assignments, security training, supervision, performance evaluations, desk assignment, internal site access, email domain, Workplace Chat, badge access, and termination decisions. Meta issued Plaintiff's badge, laptops, cell phone, and accounts, including email. Defendant Meta assigned day-to-day tasks, long-term projects, job assignments, and locations; controlled building access and work

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

assignments; applied Meta's HR/CWX policies; conducted performance reviews and investigations. Plaintiff reported to Defendant Meta's premises daily; a substantial amount of the actions occurred on Defendant Meta's premises.

7.     Defendant EOS exercised control over payroll functions and conducted purported "investigations" through Ms. Aveen Clarke ("Ms. Clarke"), Ms. Christine Tullish ("Ms. Tullish"), Ms. Claudia Ocano Todi ("Ms. Ocano Todi"), Ms. Anna McSorley ("Ms. McSorley"), and Mr. Sacha Krin ("Mr. Krin"), and further issued the termination notice dated January 19, 2023.

8.     At all relevant times, both entities possessed and exercised authority with respect to disciplinary actions and termination decisions and jointly controlled the essential terms and conditions of Plaintiff's employment, including work location, assignments, tools and equipment, compensation, and discipline. Accordingly, Meta and EOS are jointly and severally liable for the unlawful conduct alleged herein.

9.     Meta, through these supervisors, exercised the right to control the manner and means of Plaintiff's work and suffered or permitted Plaintiff to work for Meta's direct operational benefit. In the alternative, Meta and EOS operated as an integrated enterprise under Title VII and FEHA based on interrelated operations, centralized control of labor relations (including investigations, discipline, and termination), common management, and common financial control.

## IV.     **THE PARTIES**

10.     Plaintiff was employed by Defendants from approximately September 8, 2020, until her unlawful termination on January 20, 2023. Plaintiff is an individual protected from discrimination under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff is female, a protected characteristic under Title VII and FEHA.

11.     Defendant EOS IT MANAGEMENT SOLUTIONS, INC. ("EOS") is a Delaware corporation with principal place of business at 30826 Santana Street, Hayward, CA 94544, and an employer under Title VII/FEHA. Defendant EOS is listed with the California Secretary of State as an IT management business.

12.     Defendant META PLATFORMS, INC. ("Meta", formerly Facebook, Inc.) is a Delaware corporation with principal place of business at 1 Meta Way, Menlo Park, CA 94025, and

an employer under Title VII/FEHA. Defendant Meta is listed with the California Secretary of State as a social media business.

13.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each and every Defendant was the agent, servant, employee, and/or representative of each and every other Defendant and, in doing the acts alleged herein, was acting within the scope of such agency, service, employment, and/or representation. Plaintiff further alleges that each and every Defendant is jointly and severally liable to Plaintiff for the damages alleged herein. Plaintiff is informed and believes each Defendant was the agent/alter ego of the other and acted within the scope of such relationship.

14.    At all relevant times, each Defendant employed 15 or more employees for Title VII coverage and 5 or more employees for FEHA coverage.

## V.    DOE DEFENDANTS

15.    Plaintiff is ignorant of the true names and capacities of certain defendants sued herein as DOES 1–25, inclusive. Plaintiff is informed and believes that DOES 1–25 are individuals who were managers, supervisors, personnel, and/or executives of Defendants who directly participated in, ratified, or failed to prevent the unlawful conduct alleged.

16.    Plaintiff further alleges that DOES 1–25 acted as agents, alter egos, joint venturers, co-conspirators, and/or employees of Defendants and, within the course and scope of such relationships, committed, directed, or ratified the acts and omissions alleged.

17.    Plaintiff further alleges that certain DOE Defendants, including supervisors, managers, and coworkers, personally engaged in harassment on the basis of sex, and are therefore individually liable under Cal. Gov. Code § 12940(j)(3). To the extent managers or HR personnel aided, abetted, incited, compelled, or coerced the harassment or retaliation alleged herein, they are individually liable under Cal. Gov. Code § 12940(i).

18.    Plaintiff will seek leave to amend this Complaint to substitute the true names and capacities of DOE Defendants when ascertained, and to allege their specific acts with greater particularity. Plaintiff will promptly substitute true names for DOE Defendants upon identification through Rule 26(a) disclosures and discovery and will file an amended pleading without delay

after such identification.

## VI.     <u>ADMINISTRATIVE EXHAUSTION</u>

19.     Plaintiff timely submitted and verified dual-filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the California Civil Rights Department ("CRD"), formerly known as the Department of Fair Employment and Housing ("DFEH") against both Defendants—Meta (EEOC No. 555-2022-02119) and EOS (EEOC No. 550-2023-00680)—on January 17, 2023. See attached copy of Notice of Right to Sue for Defendant Meta and Defendant EOS as Exhibit A and Exhibit B, respectively.

20.     On January 18, 2023, the CRD confirmed deferral to the EEOC in a Notice to Complainant of Right to Sue (CRD No. 202208-18103531) and its file remained open until the EEOC issued a Notice of Right to Sue on July 3, 2025. Plaintiff brings FEHA claims within one year of the CRD right-to-sue notice, excluding tolled time under Cal. Gov. Code § 12965(e)(2)(B).

21.     Plaintiff has satisfied all administrative remedies as required by law. Pursuant to § 706(f) of Title VII, 42 U.S.C. § 2000e-5(f), Plaintiff has satisfied all prerequisites to suit.

22.     Plaintiff received the EEOC Notice of Right to Sue on July 3, 2025, and she filed this action within 90 days. Plaintiff's charge expressly alleged, or was reasonably related to, discrimination, harassment (including sexual and racial), hostile work environment, quid pro quo sexual harassment, retaliation, unsafe conditions, and wrongful termination based on sex.

23.     Plaintiff pursued timely administrative remedies before the EEOC and CRD in good faith, giving Defendants notice of the claims and an opportunity to investigate. Defendants are not prejudiced by tolling.

24.     All conditions precedent to suit under Title VII and FEHA have been met, occurred, or waived. Plaintiff further alleges a continuing course of related misconduct extending through January 2023; any and all applicable limitation periods were tolled and/or preserved under 42 U.S.C. § 2000e-5, Cal. Gov. Code § 12965(e)(2)(B), and the continuing violation doctrine. Plaintiff is entitled to recover attorneys' fees under 42 U.S.C. § 2000e-5(k) and Cal. Gov. Code § 12965(b). Plaintiff alleges, in summary, that between September 2020 and January 2023 she was subjected to ongoing sexual harassment, assault while unconscious, stalking, slurs, denial of

training and promotion, unsafe working conditions, and retaliation culminating in suspension and termination after protected complaints to HR, CRD, and the EEOC. Detailed examples appear below; corroborating records include Defendant Meta's Workplace Chat, email, Human Resource Information System entries, asset tickets, badge/access logs, EHS communications, and photographs.

## VII.    OPERATIVE FACTS

25.    Plaintiff began working at one of Defendant Meta's Menlo Park offices on September 8, 2020, through Defendant EOS. Her employment was unlawfully terminated on January 20, 2023.

26.    On September 9, 2020, Plaintiff was issued technical equipment to perform her job duties by Defendant Meta. Shortly after Plaintiff was issued a badge by Defendant Meta to access secure buildings at Defendant Meta.

27.    During her entire tenure, Plaintiff worked exclusively for Defendant Meta's (1) Global Product Security (formerly Global Security Strategic Product Solutions), (2) Global Security Systems and Technology, and (3) IT Logistics – Run Ops departments. At all relevant times, Defendants exercised full control over Plaintiff's hiring, supervision, assignments, compensation, and termination.

28.    Plaintiff worked across multiple Meta campuses (Newark, Fremont, Menlo Park) and used personal and company vehicles for assignments.

29.    Over the duration of her employment, Plaintiff reported to: Adam Page ("Mr. Page"), Jessica Keil ("Ms. Keil"), Mario Gomez ("Mr. Gomez"), Maria Inocencio ("Ms. Inocencio"), Torie Lester ("Ms. Lester"), Pritesh Yadvendu ("Mr. Yadvendu"), Niraj Deshmukh ("Mr. Deshmukh"), and Daniel Kelly ("Mr. Kelly").

30.    Despite public commitments to provide a safe and respectful workplace, Defendants subjected Plaintiff to systemic sexual harassment and a hostile work environment, which they tolerated, endorsed, and ratified in violation of state and federal law.

31.    In or around late September 2020, a few weeks after her hire, Mr. Page repeatedly told Plaintiff he had hired her because of her breasts, and Mr. Page began regularly making sexual

comments about her appearance, instructing her to behave in a submissive manner to please him.

32.     On October 16, 2020, Mr. Page requested Plaintiff attend a work team happy hour event. Mr. Page disclosed to Plaintiff his close personal relationship with Barry Strain ("Mr. Strain") and that it was in Plaintiff's best interests to satisfy Mr. Page's requests if she wanted to stay employed as Mr. Strain would do whatever Mr. Page asked.

33.     On October 16, 2020, Plaintiff stated she would not drink due to low alcohol tolerance. After Plaintiff refused to consume alcohol at the work event, she was mocked and humiliated by her male coworkers for not being one of the "boys."

34.     At the team happy hour on October 16, 2020, Mr. Page told Plaintiff to attend an additional location with only him to discuss her job role. Mr. Page told Plaintiff to have an alcoholic beverage so that she could "loosen up." Mr. Page initiated unwelcome sexual contact and pressure to engage in sex.

35.     Mr. Page began making sexual demands on a regular basis. After asking Plaintiff's sexual orientation, Mr. Page pressured Plaintiff to arrange threesomes with Plaintiff's female friends, which made Plaintiff uncomfortable and to which she repeatedly said no. Plaintiff was forced to endure numerous unwelcome advances that her male coworkers did not face.

36.     On October 30, 2020, Plaintiff was told to attend another team happy hour with Ms. Keil, Mr. Gomez, and Mr. Matibag. Plaintiff was pressured by Ms. Keil, Mr. Gomez, and Mr. Matibag to consume alcohol. Ms. Keil demanded that Plaintiff must drive both Ms. Keil and Mr. Matibag in Plaintiff's personal vehicle because they did not have transportation.

37.     On October 30, 2020, Plaintiff lost consciousness and awoke in a dark room with her clothes completely removed. Plaintiff became aware of a person next to her in the bed and felt hair brushing her arm. Mr. Matibag engaged in sexual intercourse with Plaintiff without her consent while she was unconscious. Plaintiff suffered severe emotional and physical distress due to Mr. Matibag's unlawful actions.

38.     Thereafter, Mr. Matibag began making repeated sexual requests on a regular basis and would become angry if Plaintiff rejected him in any way. Mr. Matibag told Plaintiff he stalked her throughout the duration of her employment so that he could see who she interacted with. Mr.

Matibag claimed to have access to Plaintiff's home address via the company portal if she decided to move. Plaintiff was forced to move residences several times out of fear for her safety.

39.    On or around November 2020, Mr. Page voluntarily departed the company for a short period of time due to conflicts with another coworker. Plaintiff attempted to report Mr. Page's actions to Ms. Keil and Mr. Gomez; however, they told Plaintiff that Mr. Page had already departed from the company and any attempt to report Mr. Page's egregious actions were futile as he was a close friend of Mr. Strain. Mr. Page later returned to a managerial role under a different team.

40.    On November 2, 2020, Defendants, through Ms. Keil, asked Plaintiff to start performing the duties of a Lead. Plaintiff was given additional responsibility and job duties without a raise. Defendants failed to update employment records to reflect her expanded responsibilities. At all times during her employment, Plaintiff had the necessary qualifications for the Lead position.

41.    On or around January 2021, Plaintiff reported Mr. Matibag to Ms. Keil and Mr. Gomez for his aggressive behavior after refusing his requests for sex. Plaintiff reported that Mr. Matibag would throw or slam objects in anger if Plaintiff did not give him attention. Mr. Matibag called Plaintiff derogatory names such as "escort" and "whore" for speaking to a male coworker. Mr. Matibag directed these slurs towards Plaintiff because she was a woman; Plaintiff's male coworkers were not subjected to the same derogatory and offensive names.

42.    Ms. Keil and Mr. Gomez advised they would speak to Mr. Matibag; however, the mistreatment increased. Ms. Keil and Mr. Gomez began to humiliate Plaintiff for reporting Mr. Matibag and would frequently make inappropriate sexual comments regarding Plaintiff's body and sex life. Plaintiff repeatedly asked for the harassment to stop, but it only increased in frequency and explicitness.

43.    Plaintiff was regularly forced to endure slurs such as "hoe," "stripper," "girl Steven," "Karen," and "white privilege." On numerous occasions, Ms. Keil made false and defamatory statements that Plaintiff engaged in "group sex" with the family she rented a room from and was part of a "throple." Ms. Keil regularly told Plaintiff to "shut up" and called Plaintiff by the incorrect name to further humiliate and intimidate her. Ms. Inocencio also regularly used

slurs to humiliate Plaintiff.

44.    On March 5, 2021, Ms. Keil asked Plaintiff if she would be willing to relocate to Washington for a position to run a warehouse for Defendants.

45.    On March 16, 2021, Ms. Keil notified Plaintiff that they would be moving to another building within Defendant Meta's control.

46.    On March 24, 2021, Ms. Keil again demanded that Plaintiff perform duties outside her role, such as walking to Starbucks to purchase Ms. Keil's coffee. When Ms. Keil was not satisfied with Plaintiff, she would throw water bottles at Plaintiff's head.

47.    On March 31, 2021, Ms. Keil stated as of April 1, 2021, new roles would be taken on. No such update was ever reflected by Defendants. Plaintiff was expected to complete additional duties without compensation or formal promotion.

48.    On April 30, 2021, Defendants offered a Forklift Training certification class to which Ms. Keil told Plaintiff she was not to attend. Plaintiff's male coworkers were not denied the opportunity to take the necessary training for their jobs. Plaintiff never received the necessary forklift training while reporting to Ms. Keil and Mr. Gomez, limiting Plaintiff's job advancement. By contrast, male coworkers in the same role were permitted to complete forklift certification in April 2021 and received duty expansions within months.

49.    On or around April 2021, after Plaintiff had made reports regarding Mr. Matibag and Mr. Page, Mr. Gomez pursued an intimate relationship with Plaintiff. Mr. Gomez sought out private meetings and asked Plaintiff to accompany him to his vehicle.  Mr.  Gomez solicited Plaintiff for oral and sexual intercourse while in the vehicle, to which Plaintiff repeatedly said no. Mr. Gomez became brazen with these requests and asked Plaintiff to perform oral sex, while in a conference room, to which Plaintiff refused. Mr. Gomez grabbed Plaintiff's hand and moved it to touch his genitals without permission.

50.    On June 23, 2021, Mr. Gomez messaged Plaintiff: "maybe happy hour can make you forget lol" referencing Plaintiff's previous complaint regarding Mr. Matibag.

51.    On June 25, 2021, Mr. Gomez suggested Plaintiff move with him to New York. Mr. Gomez told Plaintiff her position within the company would improve in exchange for

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

accepting his sexual advances.

52.    On or around June 29, 2021, Plaintiff sent a photo of herself in front of Defendant Meta's billboard to Defendant Meta's WhatsApp chat. Plaintiff was pictured in front of Defendant Meta's famous "like" button with the Pride flag behind it to celebrate Pride month. Ms. Keil shamed Plaintiff in Defendant Meta's WhatsApp chat.

53.    On July 5, 2021, Mr. Gomez requested explicit photos of Plaintiff. Mr. Gomez would later use photographs to further intimidate, humiliate, and blackmail Plaintiff by sharing images with male coworkers.

54.    On July 21, 2021, Defendant Meta, through Ms. Inocencio, sent a Workplace Chat to Plaintiff and Mr. Gomez regarding a high-priority meeting Plaintiff was scheduled to attend.

55.    On July 28, 2021, an organizational chart circulated by Ms. Keil listed Plaintiff as Lead, despite Plaintiff still not receiving a formal promotion or compensation adjustment for this role.

56.    On July 28, 2021, after many requests, Mr. Gomez demanded that Plaintiff engage in sexual intercourse. Plaintiff submitted to Mr. Gomez's demands for fear of losing her job.

57.    On July 30, 2021, Plaintiff attended a team meeting in Defendant Meta's conference room. While attending this meeting, Ms. Keil and Mr. Gomez discussed an upcoming work team happy hour and asked Plaintiff why she was not planning to attend. Plaintiff reiterated that she was unable to attend for personal reasons and that she was in the process of moving. It was at this point Ms. Keil further humiliated Plaintiff by saying she did not have anywhere to go, making a reference to Plaintiff vacating her residence after a home burglary.

58.    On July 30, 2021, Plaintiff spoke to Mr. Gomez about the incident that transpired in the conference room earlier that day. Plaintiff asked Mr. Gomez if she could leave for the remainder of the day after being humiliated by Ms. Keil. Mr. Gomez approved of Plaintiff leaving for the rest of the day and assured Plaintiff that he would speak to Ms. Keil about her inappropriate behavior.

59.    On August 2, 2021, Plaintiff returned to work and was informed by Ms. Keil and Mr. Gomez that leaving early would not be permitted, to which Plaintiff objected that she was

given permission by Mr. Gomez.

60.    On August 2, 2021, Mr. Gomez messaged Plaintiff via Defendant Meta's Workplace Chat that he would address the mistreatment with Ms. Keil.

61.    On August 3, 2021, Plaintiff filed a report with Defendant EOS and provided documentation of the incidents.

62.    On August 6, 2021, a meeting was conducted regarding Plaintiff's complaints. At this meeting, all individuals were portrayed as Human Resources. Plaintiff would later discover that Ms. Claudia Ocano Todi was never Human Resources and that Plaintiff's confidential information was later leaked at a company happy hour event by Ms. Ocano Todi while intoxicated.

63.    On or around August 2021, Plaintiff was told she was no longer allowed to expense gas mileage or toll bridge fees, while her male counterparts were still allowed to. During the same period, male coworkers on Plaintiff's team continued to receive mileage and toll reimbursements for campus travel between Menlo Park, Newark, and Fremont, as reflected in monthly approvals by Defendants.

64.    On August 10, 2021, Plaintiff followed up by email regarding her complaints but received no update.

65.    On August 26, 2021, Plaintiff followed up again. Defendants continued to ignore her.

66.    That same day, Plaintiff was contacted by Mr. Krin about a separate alleged incident involving Mr. Matibag. Plaintiff explained she was being targeted for reporting harassment by Mr. Gomez, Mr. Matibag, Mr. Page, and Ms. Keil. Plaintiff later learned Mr. Matibag admitted Ms. Keil had pressured him to file a false retaliatory complaint against Plaintiff.

67.    On September 8, 2021, Plaintiff reported to work and advised Mr. Gomez that she had a meeting scheduled with Defendant EOS Human Resources that morning, but she would begin her duties when she returned from that meeting. Plaintiff was told a recording of the meeting would be sent to her for her own records. Plaintiff asked many times and never received the recording that was promised.

68.    On September 8, 2021, while Plaintiff was attending the meeting to report on

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

unlawful behavior, she was removed by Defendant EOS, through Mr. Gomez and Mr. Matibag, from the daily operational group message channels she used to perform her job duties for Defendant Meta. Mr. Matibag remained in these group message channels and received the promotion Plaintiff was promised. Plaintiff was never added to these group message channels again. The Lead responsibilities Plaintiff had performed since November 2020—coordinating warehouse workflows, assigning daily tasks, and approving outbound shipments—were reassigned to Mr. Matibag without posting the role or adjusting Plaintiff's pay despite prior assurances of promotion.

69.     On September 9, 2021, Plaintiff sent an email to Ms. Clarke and Ms. Ocano Todi stating Mr. Gomez's retaliatory actions. Ms. Ocano Todi, a Service Delivery Executive, and not Human Resources, asked Plaintiff for mediation.

70.     On September 9, 2021, Plaintiff responded to the mediation request and strongly advised why she was against it and fearful of Ms. Keil's temper and repeated behavior of throwing objects at people when she was unhappy.

71.     On September 10, 2021, Defendants, through Mr. Krin, contacted Plaintiff, Ms. Keil, Mr. Matibag, Mr. Gomez, Mr. Garcia, and Mr. Chan regarding a mandatory meeting to discuss Plaintiff's confidential information.

72.     Plaintiff was forced to attend a meeting with her entire team, the Vice President of Managed Services, Human Resources, and the Service Delivery Executive. Plaintiff was previously led to believe this meeting would be only with Human Resources. Plaintiff was further humiliated as they used Plaintiff's confidential information and wrongfully notified her entire team of her protected information.

73.     On September 18, 2021, Plaintiff began therapy treatment as a direct result of the sexual harassment she experienced due to Defendants' actions.

74.     On September 22, 2021, Plaintiff reached out to Defendant Meta, through CWX (Contingent Worker HR contact) to report Defendant EOS and the associated individuals.

75.     On September 22, 2021, Defendant Meta responded to Plaintiff that someone would be looking into it further. Defendant Meta, through Ms. Nikki Beckley, added Ms. Ify Okoli-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Watson ("Ms. Okoli-Watson") and Ms. Allie M. Wright ("Ms. Wright") of Defendant Meta for visibility. Ms. Okoli-Watson and Ms. Wright are listed as Defendant Meta's Associate General Counsel.

76.     On September 30, 2021, Plaintiff sent a follow-up email to Defendant Meta but did not receive a response.

77.     On October 7, 2021, Defendants EOS and Meta through Mr. Krin, sent Plaintiff a Warehouse Organization Chart.

78.     On October 7, 2021, Plaintiff asked Defendant EOS through Mr. Krin how she was demoted with no communication or notice. Mr. Krin responded that he did not know enough about the organization of Plaintiff's team to discuss the chart he had just sent her.

79.     On October 11, 2021, Plaintiff sent another follow-up email to Defendant Meta, but she did not receive a response.

80.     On October 14, 2021, Plaintiff was asked to attend a meeting with Defendant EOS, through Ms. Clarke and Ms. Ocano Todi.

81.     On October 21, 2021, Plaintiff sent another follow-up email to Defendant Meta, but she did not receive a response.

82.     On October 25, 2021, Defendant EOS refused to act on Plaintiff's complaints of harassment. Due to the harassment and discrimination being so severe, Plaintiff transferred from Global Product Security to Global Security Systems and Technology and now reported to Ms. Lester.

83.     On November 13, 2021, Defendant EOS incorrectly updated BambooHR to reflect Plaintiff reported to Ms. Keil with a demoted job title. Plaintiff received no communication from Defendants regarding this inaccuracy.

84.     On November 18, 2021, Plaintiff emailed Defendant Meta through Employment Law with Meta HR asking for help, and she received a response that the department was looking into it.

85.     On November 21, 2021, Plaintiff received a call from Mr. Matibag attempting to coerce Plaintiff into a relationship with him. Plaintiff told Mr. Matibag that calling her at 1:30 am

was inappropriate.

86.     On December 1, 2021, Plaintiff sent another follow-up email to Defendant Meta, and Defendant Meta responded that they have forwarded it and have no more information.

87.     On December 2, 2021, Plaintiff contacted Defendant Meta to inquire regarding her complaint and the average time for investigating such complaints (as it had been four months with no update or resolution). Defendant Meta claimed that it had forwarded it to the appropriate contact. Plaintiff then asked for a different contact who could respond to the complaints.

88.     On December 6, 2021, Mr. Matibag of Defendant EOS created a high priority request in Defendant Meta's task system to reassign Plaintiff's assets to himself. Mr. Matibag's signature on the request included the title of Warehouse Lead.

89.     On December 10, 2021, a representative from Defendant Meta contacted Plaintiff stating he "is working on it."

90.     On December 14, 2021, Plaintiff was contacted by Brendan Brownfield ("Mr. Brownfield"), a Company Investigator for Employment Law and Investigations with Defendant Meta.

91.     On December 16, 2021, Plaintiff had a call with both Defendants. Plaintiff's information was not kept confidential during the investigative process, and she was forced to speak about harassment in front of both Defendants. Plaintiff sent Mr. Brownfield of Defendant Meta a Google Drive link containing evidence of Defendants' harassment.

92.     On January 4, 2022, Plaintiff followed up with Defendant Meta and was told they were still investigating.

93.     On April 1, 2022, Defendant EOS, through Ms. Ocano Todi, called to inform Plaintiff that Defendant Meta closed Plaintiff's case with no action taken. No further details were provided to Plaintiff.

94.     On or around May 2022, Plaintiff transferred to IT Logistics – Run Ops in hopes of being separated from her abusers. She then reported to Pritesh Yadvendu and Niraj Deshmukh of Defendant Meta. Daniel Kelly of Defendant EOS was in a managerial role and remained stationed overseas. Although reassigned, she continued to work in the same building as Ms. Keil,

Mr. Page, Mr. Gomez, and Mr. Matibag.

95.     On August 11, 2022, Plaintiff's former manager, Ms. Lester, asked to speak to Plaintiff in a conference room. Ms. Lester told Plaintiff that Ms. Claudia Ocano Todi had been speaking about the details of Plaintiff's case at a company happy hour with the owner of Defendant EOS.

96.     On August 11, 2022, Plaintiff reported Ms. Lester's information to Mr. Kelly at Defendant EOS. Mr. Kelly told Plaintiff to contact Ms. Christine Tullish.

97.     On August 15, 2022, Plaintiff reached out to Defendant EOS through Ms. Tullish via email to file another complaint with Defendants.

98.     On August 17, 2022, Plaintiff had a twelve-minute phone conversation with Ms. Tullish to speak about the ongoing harassment.

99.     On August 22, 2022, Plaintiff sent a follow-up email to Ms. Tullish.

100.    On August 23, 2022, Defendant EOS through Ms. Tullish responded to Plaintiff and requested that Plaintiff call her.

101.    On August 23, 2022, Plaintiff had a twenty-five-minute phone call with Defendant EOS, through Ms. Tullish. Ms. Tullish told Plaintiff that derogatory slurs such as "white privilege" were terms for the immediate termination of Ms. Keil. Defendant EOS, through Ms. Tullish, told Plaintiff that Ms. Ocano Todi was never actually Human Resources and should never have been assigned to the case in the first place. Ms. Tullish proceeded to tell Plaintiff that Defendant EOS was not as versed in United States laws.

102.    On August 31, 2022, Plaintiff reached out to Defendant EOS through Ms. Tullish for an update and for a copy of the investigation into the case. Plaintiff never received a copy of any written report or video meetings that were initially promised by Defendants.

103.    On August 31, 2022, Plaintiff filed with the Civil Rights Department in the State of California. Plaintiff received the first available appointment date of December 6, 2022.

104.    On September 7, 2022, Plaintiff reached out to Defendant EOS through their contact, Ms. Tullish, and asked whether there was another contact she should be reaching out to for an update. Ms. Tullish said no.

105.     On September 7, 2022, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission and was given the first available appointment for January 10, 2023.

106.     On September 13, 2022, Defendant EOS through their contact, Ms. Tullish, sent an email to Plaintiff saying the case is closed.

107.     On September 13, 2022, Plaintiff responded to Defendant EOS requesting the company handbook and a follow-up request to the investigation into her claims. Plaintiff never received either from Defendants.

108.     On September 13, 2022, Plaintiff also reported Defendants' operation of an on-campus bar in violation of Defendants' Employee Handbook and in contravention of Defendants' duty to provide a safe and healthful workplace under Cal. Lab. Code § 6400 and applicable Title 8, California Code of Regulations (Cal/OSHA). Plaintiff told Defendants that employees would operate heavy machinery (pallet jacks, forklifts, and vans) while intoxicated. Defendants ignored this report, failed to take corrective action, and instead retaliated against Plaintiff by humiliating her, stripping her duties, suspending her, and ultimately terminating her employment.

109.     Plaintiff reported the on-campus alcohol service to Defendant EOS through Ms. Tullish and Mr. Kelly because it created safety hazards in secured technical areas (including slips, impaired judgment near heavy machinery and equipment, and alcohol presence contrary to site safety protocols), and she reasonably believed it violated Title 8, California Code of Regulations (Cal/OSHA) workplace-safety standards and company policy. Defendants took no corrective action.

110.     On September 14, 2022, Mr. Matibag persisted in attempting to contact Plaintiff. Mr. Matibag had consistently followed Plaintiff around campus, waiting near Plaintiff's car, repeatedly asking Plaintiff on dates even after Plaintiff repeatedly refused. Mr. Matibag admitted to stalking Plaintiff's roommates' social media accounts to track her whereabouts.

111.     On September 23, 2022, Plaintiff sent a follow-up email to Defendant EOS through their contact, Ms. Tullish, asking again for the employee handbook and investigation report. Plaintiff never received any such copy.

112.     On October 5, 2022, Plaintiff sent a follow-up email to Defendant EOS through

their contact, Mr. Kelly, to report that Ms. Tullish has stopped responding and the harassment had continued daily. Plaintiff reiterated to Mr. Kelly that Mr. Matibag was frequently hostile when Plaintiff refused his advances and that Defendants had moved Mr. Matibag to another desk, so he sat within 20 feet and in plain view of Plaintiff's desk. Plaintiff was forced to endure Mr. Matibag's stares, comments, and being followed throughout the campus.

113.    By October 5, 2022, despite Plaintiff's complaints to Defendants, Mr. Matibag was transferred to work under Mr. Page for Defendant EOS and Mr. Deshmukh of Defendant Meta.

114.    On November 7, 2022, Plaintiff submitted a time-off request for December 12 to 14, 2022. Plaintiff had more than 10 days of vacation available at the time of the request.

115.    On December 5, 2022, Plaintiff completed work at Defendant Meta's building when the Automated Storage and Retrieval System malfunctioned and flooded the IT Logistics – Run Ops Department.

116.    On December 5, 2022, Plaintiff notified Mr. Yadvendu, through Defendant Meta, that the Automated Storage and Retrieval System (ASRS) had leaked and that 911 had been called. Mr. Yadvendu of Defendant Meta did not respond to Plaintiff.

117.    On December 5, 2022, Plaintiff was instructed to salvage and clean thousands of high-security, Legal Hold company laptops and cell phones damaged during the flood. Plaintiff was not initially given gloves, masks, cleaning solution, or a battery-electrolyte neutralizer. The devices were wet, and some had swollen or leaking lithium-ion batteries, emitting electrolyte fumes that burned Plaintiff's eyes.

118.    On December 5, 2022, Defendant Meta, through Mr. Niraj Deshmukh, notified the building's Workplace Chat about a large volume of toxic fluid that had leaked inside Defendant Meta's warehouse.

119.    On December 5, 2022, Plaintiff began requesting necessary materials to complete the job of drying and cleaning the battery leakage and acid from the devices. When Plaintiff raised safety concerns about swollen batteries and chemical fumes, Defendants responded with hostility, stripped her duties, and later suspended her, in retaliation for protected complaints. Plaintiff notified Defendants that the laptops and cell phones were not safe to touch as they were wet,

leaking, swollen batteries, and the fumes burned Plaintiff's eyes.

120.    On December 6, 2022, Plaintiff had an appointment to report Defendants to the California Civil Rights Department (formerly Department of Fair Employment and Housing).

121.    On December 12, 2022, Plaintiff had scheduled 3 days of paid time off that had been requested over a month in advance. Defendants criticized and penalized Plaintiff for taking approved leave by stripping her projects upon return.

122.    On December 15, 2022, when Plaintiff returned to work the projects that she had been overseeing were stripped from her. Plaintiff was still expected to work with the unsafe devices.

123.    On December 28, 2022, Mr. Ryan Fillon asked in the Defendant Meta's Workplace Chat whether anyone had large fans to mitigate the vinegar cleaning fumes because the odor had made the room unusable.

124.    On    December    28,    2022,    Plaintiff    discovered    that Defendants, through Environmental Health and Safety, had not evaluated these devices at all. Plaintiff's original concerns had been silenced and overruled. Plaintiff had been led to believe by Defendants that this cleaning procedure was an approved and safe method. Plaintiff was forced to work in unacceptable working conditions by Defendant Meta, through Mr. Yadvendu and Mr. Deshmukh, and under the false pretenses that these devices had been evaluated, cleared to work on, and safe to handle.

125.    On January 9, 2023, Plaintiff was informed by Defendants, through Sof'ya Yevgrafova ("Mx. Yevgrafova"), that she was being replaced and Plaintiff's role was being 100% absorbed by Mx. Yevgrafova, who told Plaintiff that they had been notified by Defendants on January 6, 2023.

126.    On January 10, 2023, Plaintiff reached out to Defendants, through Mr. Kelly and Mr. Wilson, and asked if her position was being changed without notice. Defendants assured Plaintiff it was only cross-training. Plaintiff later learned this representation was false.

127.    On January 10, 2023, Plaintiff attended her previously scheduled appointment with the U.S. Equal Employment Opportunity Commission to file claims against Defendants.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

128.    On January 13, 2023, Plaintiff was suspended with no explanation. Plaintiff's internal Meta account was deactivated, and she was locked out of her email. Coworkers contacted Plaintiff to ask why she had been terminated, yet Defendants still had not provided notification to Plaintiff.

129.    On January 19, 2023, Plaintiff received an email from Defendant EOS, through Ms. Tullish, that stated Plaintiff's employment had been terminated and her last day with the company was January 20, 2023. Plaintiff never received any of her personal items back from Defendants. Plaintiff was provided with a Confidential Separation Agreement and Release by Defendants. Plaintiff did not sign this agreement and therefore maintains her rights to pursue legal action against Defendants.

130.    Plaintiff was treated less favorably than male employees, subjected to degrading comments, denial of opportunities, unwelcome sexual advances and touching, insults, and humiliation, while Defendants failed to take corrective action. Plaintiff's male coworkers were not subjected to the same harassment.

131.    The acts above comprised a continuing course of related harassment and retaliation beginning in late 2020 and continuing through January 2023, including removal from channels, stripping projects, suspension, and wrongful termination.

132.    Defendants' decisions to take the adverse actions against Plaintiff, including, but not limited to, those described in the preceding paragraphs, were malicious, willful, and intentional, and were committed with reckless disregard for the rights and sensibilities of Plaintiff.

133.    As a direct and proximate result of the aforesaid discrimination based on sex, Plaintiff has sustained harm including severe emotional distress and the loss of compensation, including, but not limited to, wages and other benefits she otherwise would have received.

134.    Officers, directors, and managing agents of Defendants—including the Vice President of Managed Services, the Service Delivery Executive, department heads, and others with substantial discretionary authority over investigations, staffing, and discipline across multiple campuses—were notified of Plaintiff's reports, had authority to act, declined corrective action, and ratified the continued proximity of harassers and the adverse actions culminating in Plaintiff's

termination.

135.    Plaintiff is entitled to recover attorneys' fees under Cal. Gov. Code § 12965(b) and any other law providing for recovery of attorneys' fees. As a result of Defendants' conduct, Plaintiff seeks compensatory damages, including lost wages and benefits, emotional distress, consequential damages, punitive damages under federal and state law, statutory penalties, restitution, attorneys' fees, and costs of suit.

### VIII.    <u>EVIDENCE PRESERVATION AND CORROBORATION</u>

136.    Defendants have been instructed to (and have a continuing duty to) preserve all relevant ESI and hard-copy materials, including, but not limited to: Workplace/Slack/WhatsApp/Workplace Chat messages, email (with metadata), HRIS/BambooHR entries, EHS reports, asset-ticketing systems, calendar invites, badge/access logs, CCTV, investigative notes, and mobile device data within Defendants' control or the control of third-party vendors. Preservation includes server logs, device logs, audit trails, and version histories, with legal holds issued to custodians across Meta and EOS. For CCTV and access-control systems with rolling overwrite, Defendants must suspend auto-deletion and export relevant footage/logs for the period September 2020–January 2023, plus 90 days before/after. Plaintiff further requests preservation of forensic artifacts (hash values; EXIF data; email headers; chat message IDs) and production in load-file format.

### IX.    <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION

### <u>TITLE VII — HOSTILE WORK ENVIRONMENT / SEXUAL HARASSMENT</u>

### <u>(42 U.S.C. § 2000e-2(a)(1))</u>

<u>(Against Defendants Meta and EOS)</u>

137.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 136 as though fully set forth in this cause of action.

138.    Plaintiff was subjected to severe/pervasive harassment: unwelcome sexual advances and coercion, sexual assault while unconscious, stalking/intimidation, slurs and humiliation; and quid pro quo demands tying job benefits to sexual compliance.

139.    This conduct unreasonably interfered with Plaintiff's ability to perform her job and created an intimidating, hostile, and abusive work environment.

140.    Defendants were on notice of the harassment through Plaintiff's repeated complaints and failed to take immediate and appropriate corrective action. Plaintiff repeatedly used available complaint channels, including written complaints, HR meetings, and reports to Defendants' management. Tangible adverse actions—including removal from projects, suspension, and termination—followed directly after her reports of supervisor harassment. Investigations were neither prompt nor impartial and breached confidentiality by disclosing Plaintiff's complaints to coworkers and managers, further increasing harassment and retaliation.

141.    Plaintiff is entitled to compensatory damages, punitive damages, equitable and injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k). Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

**SECOND CAUSE OF ACTION**

**<u>TITLE VII — RETALIATION</u>**

**<u>(42 U.S.C. § 2000e-3(a))</u>**

<u>(Against Defendants Meta and EOS)</u>

142.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 141 as though fully set forth in this cause of action.

143.    Plaintiff engaged in protected activity by opposing harassment and filing internal complaints. Defendants retaliated against Plaintiff by excluding her from operational communications, stripping her projects and duties, suspending and terminating her employment.

144.    Defendants' retaliatory conduct was materially adverse and intended to dissuade Plaintiff from exercising her rights, and temporal proximity supports causation.

145.    In September 2021, Plaintiff filed an HR complaint and within days was removed from operational group channels and stripped of duties. Between September and December 2022,

20

Plaintiff reported safety and harassment concerns, including on-campus alcohol, coworkers operating heavy machinery while under the influence, Automated Storage and Retrieval System leaks, battery hazards, and lack of protective equipment. Shortly thereafter, her projects were stripped, and she was forced to continue working in proximity to her harassers and abusers. On January 10, 2023, Plaintiff attended an appointment with the EEOC, and she was suspended and her accounts deactivated within 3 days of that appointment. Within one week, on January 20, 2023, she was terminated.

146.    Plaintiff is entitled to compensatory damages, punitive damages, equitable, and injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k). Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

**THIRD CAUSE OF ACTION**

**<u>FEHA — DISCRIMINATION (SEX)</u>**

**<u>(Cal. Gov. Code § 12940(a))</u>**

(Against Defendants Meta and EOS)

147.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 146 as though fully set forth in this cause of action.

148.    Defendants discriminated against Plaintiff because of Plaintiff's sex. Plaintiff was subject to derogatory comments, denial of training and promotion opportunities, and adverse employment actions because of Plaintiff's sex.

149.    On multiple occasions, supervisors expressly or impliedly conditioned job benefits on Plaintiff's submission to sexual demands: (a) Mr. Gomez stated that Plaintiff's position within the company would improve if she accepted his advances and demanded intercourse on July 28, 2021; Plaintiff reasonably believed promotion/lead designation and project assignments depended on compliance; and(b) Mr. Page told Plaintiff it was in her best interests to satisfy his requests to stay employed and leveraged his relationship with Mr. Strain; Plaintiff understood continued

employment and favorable assignments were contingent on acquiescence. Tangible actions followed Plaintiff's refusals, including removal from operational channels, stripping of Lead duties, suspension, and termination.

150.    Defendants failed to take reasonable steps to prevent discrimination, harassment, and retaliation despite repeated notice. Similarly situated male coworkers received materially favorable treatment, including (a) approval for forklift training with resulting duty expansions and pay adjustments, (b) continued reimbursement of mileage and toll expenses for identical campus travel when Plaintiff's were denied, and (c) promotion or assignment to Lead responsibilities that Plaintiff had performed without title or pay. This disparate treatment, coupled with contemporaneous slurs and stereotyping, evidences discrimination based on Plaintiff's sex.

151.    Managing agents of Defendants and department heads with broad discretionary authority were notified of Plaintiff's complaints, possessed authority over investigations and staffing across multiple campuses, and failed to act. Instead, they ratified continued harassment and retaliatory acts, including Plaintiff's suspension and termination.

152.    Under Civ. Code § 3294, Defendants' managing agents, having ratified and participated in malicious and oppressive conduct, are liable for punitive damages. Such conduct supports an award of punitive damages, as authorized under Civil Code § 3294 and recoverable in FEHA actions.

153.    Pursuant to Gov. Code § 12965(b), Plaintiff is entitled to economic damages, emotional distress, injunctive relief, and reasonable attorneys' fees, as well as attorneys' fees. Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

### FOURTH CAUSE OF ACTION

### FEHA — HARASSMENT (SEX, INCLUDING QUID PRO QUO)

(Against Defendants Meta and EOS)

154.    Plaintiff hereby realleges and incorporates by reference the allegations in

paragraphs 1 through 153 as though fully set forth in this cause of action.

155.    Plaintiff was subjected to unwelcome sexual conduct and humiliating slurs tied to sex, sexual orientation, and race. The conduct was severe/pervasive and altered employment conditions.

156.    Defendants are strictly liable for supervisor harassment and liable for coworker harassment after notice/failure to act.

157.    Defendants' actions were malicious, willful, fraudulent, and oppressive, and were carried out with conscious disregard for Plaintiff's rights.

158.    Because the harassment was committed by supervisors, Defendants are strictly liable under Cal. Gov. Code § 12940(j)(1).

159.    Under Civ. Code § 3294, Defendants' managing agents, having ratified and participated in malicious and oppressive conduct, are liable for punitive damages. Such conduct supports an award of punitive damages, as authorized under Civil Code § 3294 and recoverable in FEHA actions.

160.    Plaintiff seeks economic damages, emotional distress, injunctive relief, and reasonable attorneys' fees. Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

### FIFTH CAUSE OF ACTION

### FEHA: RETALIATION

### (Cal. Gov. Code § 12940(h))

(Against Defendants Meta and EOS)

161.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 160 as though fully set forth in this cause of action.

162.    After Plaintiff opposed/complained of FEHA violations, Defendants retaliated (project removal, exclusion from communications, suspension, termination).

163.    Plaintiff's protected activity was a substantial motivating reason for Defendants'

adverse actions.

164.    The sequence evidencing causation includes: Plaintiff's September 2021 HR complaint was followed immediately by removal from channels and duties; her September through December 2022 safety complaints were followed by project stripping; and her attendance at her January 10, 2023, EEOC appointment was followed with suspension on January 13, 2023, and termination on January 20, 2023.

165.    Under Civ. Code § 3294, Defendants' managing agents, having ratified and participated in malicious and oppressive conduct, are liable for punitive damages. Such conduct supports an award of punitive damages, as authorized under Civil Code § 3294 and recoverable in FEHA actions.

166.    Plaintiff seeks economic damages, emotional distress, injunctive relief, and reasonable attorneys' fees. Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

## SIXTH CAUSE OF ACTION

### FEHA: FAILURE TO PREVENT DISCRIMINATION AND RETALIATION

### (Cal. Gov. Code § 12940(k))

(Against Defendants Meta and EOS)

167.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 166 as though fully set forth in this cause of action.

168.    Defendants failed to take reasonable steps to prevent and promptly correct discrimination and harassment despite repeated notice (including impartial investigations, confidentiality, protection from retaliation, and separation from harassers).

169.    Under Civ. Code § 3294, Defendants' managing agents, having ratified and participated in malicious and oppressive conduct, are liable for punitive damages. Such conduct supports an award of punitive damages, as authorized under Civil Code § 3294 and recoverable in FEHA actions.

170.     Plaintiff seeks economic damages, emotional distress, injunctive relief, and reasonable attorneys' fees. Plaintiff seeks injunctive relief because, absent court-ordered policy changes, training, and an independent safety monitor, there is a realistic prospect of continuing harm to Plaintiff through ongoing reputational injury, negative job references, and the maintenance of retaliatory/harassing records in personnel files that impede comparable employment.

## SEVENTH CAUSE OF ACTION

## WHISTLEBLOWER RETALIATION

## (Cal. Lab. Code § 1102.5)

(Against Defendants Meta and EOS)

171.     Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 170 as though fully set forth in this cause of action.

172.     Plaintiff disclosed information, and/or had reasonable cause to believe she was disclosing information, to supervisors and persons with authority to investigate, discover, or correct violations, including safety violations (Cal. Lab. Code § 6400; Title 8, Cal. Code Regs.), and violations of anti-discrimination/harassment laws. *See* Cal. Lab. Code § 1102.5(b). Plaintiff also refused to participate in activity that would result in such violations. *Id.* at § 1102.5(c).

173.     The adverse actions followed in close temporal proximity to Plaintiff's protected complaints. Within days of reporting unsafe conditions and discrimination, Plaintiff was stripped of projects, excluded from operational communications, suspended, and ultimately terminated. Similarly situated employees who did not complain were not disciplined or stripped of duties. Defendants offered shifting explanations for these actions, further evidence of retaliatory motive.

174.     Thereafter, Defendants took adverse employment actions against Plaintiff, including stripping duties, excluding her from operational communications, suspending her, and wrongfully terminating her employment. *Id.* at §§ 1102.5(b)–(e).

175.     The sequence evidencing causation includes Plaintiff's safety complaints between December 5, 2022, and December 28, 2022, regarding Automated Storage and Retrieval System leaks, swollen batteries, and toxic fumes, which were followed by the stripping of her projects; and her attendance at her January 10, 2023, EEOC appointment was followed with suspension on

January 13, 2023, and termination on January 20, 2023.

176.    Plaintiff's protected activity was a contributing factor in Defendants' adverse actions. Defendants cannot meet their burden under Cal. Lab. Code § 1102.6 to prove by clear and convincing evidence that they would have taken the same actions for legitimate, independent reasons.

177.    This claim arises under Cal. Lab. Code § 1102.5 and is pled separately from Plaintiff's FEHA claims. This claim includes retaliation for reporting Defendants' operation of an on-campus bar in violation of company policy and workplace-safety standards.

178.    Plaintiff seeks all remedies available under § 1102.5 and § 1102.6, including compensatory damages, a civil penalty up to $10,000 per violation payable to Plaintiff (§ 1102.5(f)), injunctive relief, and reasonable attorneys' fees and costs (§ 1102.5(j)).

## EIGHTH CAUSE OF ACTION

### Retaliation for Safety Complaints

### (Cal. Lab. Code § 6310)

(Against Defendants Meta and EOS)

179.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 178 as though fully set forth in this cause of action.

180.    Plaintiff complained in good faith about unsafe conditions (ASRS leak; swollen/leaking batteries; chemical fumes; lack of PPE; on-campus alcohol creating equipment hazards). Plaintiff requested personal protective equipment, including gloves, masks, and neutralizing solution, to handle swollen batteries and chemical leaks from the Automated Storage and Retrieval System. Managers, including Mr. Yadvendu and Mr. Deshmukh of Defendant Meta, directed Plaintiff to continue unsafe work without being evaluated. Plaintiff's subsequent complaints triggered retaliatory acts including project removal, suspension, and wrongful termination.

181.    Defendants retaliated by stripping duties, suspending, and terminating her. The sequence evidencing causation includes Plaintiff's December 2022 reports of hazardous conditions and requests for protective equipment were followed by: stripping projects upon her return from

pre-approved leave on December 15, 2022; suspension on January 13, 2023; and termination on January 20, 2023.

182.    Plaintiff seeks compensatory damages, penalties, and attorneys' fees as permitted (including Cal. Lab. Code § 98.6(c)(1) and civil penalties under § 98.6(b)(3)).

### NINTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COMMON LAW)

#### (Against Defendants Meta and EOS)

183.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 182 as though fully set forth in this cause of action.

184.    Defendants' extreme outrageous conduct included coercion, stalking, humiliation, public exposure of confidential employee and complaint information, and retaliatory termination.

185.    Defendants acted intentionally or with reckless disregard, and Plaintiff suffered severe emotional distress requiring therapy. Defendants' conduct was so extreme and outrageous that it exceeded all bounds tolerated in a civilized society.

186.    This claim is not barred by workers' compensation exclusivity because it arises from harassment, sexual assault, privacy breaches, and statutory workplace-safety violations, not ordinary personnel management decisions. This claim is not barred by workers' compensation exclusivity because it arises from intentional torts, statutory violations (FEHA; Cal. Lab. Code §§ 1102.5, 6310), and conduct outside the risks of the compensation bargain, including public disclosure of confidential complaint information and retaliatory termination undertaken with malice and oppression.

187.    Plaintiff seeks economic damages, emotional distress, punitive damages, and reasonable attorneys' fees.

### PUNITIVE DAMAGES ALLEGATIONS

188.    Plaintiff alleges that the misconduct described herein was undertaken, authorized, ratified, or knowingly disregarded by Defendants' officers, directors, and managing agents, including, but not limited to, Vice Presidents, Service Delivery Executives, department heads, and other individuals with broad discretionary authority over investigations, staffing, and discipline

across multiple campuses.

189.    These managing agents had advanced knowledge of wrongful conduct, failed to take corrective action, and ratified or approved the continued harassment, retaliation, and unsafe working conditions.

190.    Defendants' conduct was carried out with malice, oppression, and conscious disregard for Plaintiff's rights.

191.    Accordingly, Plaintiff seeks punitive and exemplary damages against Defendants pursuant to California Civil Code § 3294(b).

## X.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ASHLEY SIMPSON respectfully prays for judgment against Defendants EOS IT MANAGEMENT SOLUTIONS, INC., META PLATFORMS, INC., and DOES 1–25, inclusive, jointly and severally, as follows:

**1.    General and Compensatory Damages**

a.    For past and future lost wages, salary, bonuses, employment benefits, and other compensation.

b.    For damage to Plaintiff's career, employment opportunities, and earning capacity.

c.    For emotional distress, humiliation, mental anguish, pain and suffering, and loss of enjoyment of life, caused by discrimination, harassment, and retaliation based on sex, sexual orientation, and/or race.

**2.    Special Damages**

a.    For out-of-pocket losses, relocation expenses, medical expenses, and therapy costs incurred because of Defendants' conduct.

**3.    Punitive and Exemplary Damages**

a.    Against Defendants under Cal. Civ. Code § 3294 for intentional infliction of emotional distress and for FEHA violations based on managing-agent ratification, entitling Plaintiff to punitive and exemplary damages to punish and deter such conduct.

b.    Punitive damages under Title VII are subject to the statutory caps in 42 U.S.C. § 1981a(b)(3).

**4.      Statutory Damages and Penalties**

a.      As authorized under Title VII, FEHA, California Labor Code (including §§ 6310, 1102.5), and any other applicable provision of state or federal law.

b.      Civil penalty of up to $10,000 per violation payable to Plaintiff under Cal. Lab. Code § 1102.5(f).

c.      Civil penalties as authorized by Cal. Lab. Code § 98.6(b)(3) for violations of § 98.6.

**5.      Injunctive and Equitable Relief**

a.      An injunction requiring Defendants to: (i) implement, post, and enforce robust anti-discrimination, anti-harassment, anti-retaliation, and safety policies; (ii) provide annual supervisor and employee training regarding FEHA/Title VII and workplace safety; (iii) designate an independent EEO/safety monitor for at least two years; (iv) conduct prompt, impartial investigations with confidentiality protections and anti-retaliation safeguards; and (v) expunge adverse entries from Plaintiff's personnel file and provide a neutral reference.

b.      Tax gross-up on wage components to neutralize adverse tax consequences of a lump-sum award.

c.      Policies and monitoring necessary to ensure a non-retaliatory, harassment-free workplace with appropriate injunctive measures tailored to Plaintiff's future employment opportunities.

d.      An order requiring Defendants to provide training, monitoring, and oversight of management and Human Resources personnel.

**6.      Attorneys' Fees and Costs**

a.      For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); Cal. Gov. Code § 12965(b); Cal. Lab. Code § 1102.5(j); Cal. Lab. Code § 98.6(c)(1); Cal. Code Civ. Proc. § 1021.5, and any other applicable law.

**7.      Pre-Judgment and Post-Judgment Interest**

a.      As permitted by law on all amounts awarded, including prejudgment interest on economic losses under Cal. Civ. Code § 3287(a) (and/or § 3287(b) as applicable), prejudgment interest under Cal. Civ. Code § 3288 for tort claims arising from oppression, fraud, or malice, and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

post-judgment interest under 28 U.S.C. § 1961.

**8. Such Other and Further Relief**

a. As the Court may deem just, equitable, and proper.

## XI.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under Fed. R. Civ. P. 38(b).

Dated:  September 26, 2025                    **LAW OFFICE OF JAS DHILLON, P.C.**


By: _Jas Dhillon_____

JAS S. DHILLON, Esq.

Attorney for Plaintiff

ASHLEY SIMPSON

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF